Martin *v.* New York, Susquehanna and Western R. R. Co.

## James F. Martin

*v.*

## The New York, Susquehanna and Western R. R. Co.

A deed for lands conveyed to the receivers of a railroad company contained a covenant that the company would build and maintain certain fences thereon, and the receivers further agreed, verbally, that they would give the grantor an annual free pass over the railroad, and renew the same annually during his life. The deed was duly executed and given to the grantor's attorney to be delivered. The receivers objected to the insertion of the fence covenant in the deed, and promised to observe it if it were struck out, to which the attorney consented, and delivered the deed. The receivers built the fences as provided in the covenant, and also issued the pass to the grantor annually as long as they had control of the road. After the receivers had been relieved, and the re-organized company had taken possession of the road, they refused to keep the fence covenant or to deliver the annual pass to the grantor. On demurrer to the grantor's bill for specific performance—*Held*, that the deed might be reformed by inserting the covenant to build and maintain the fences, but that the complainant is entitled to no relief as to the annual pass; since no covenant on that head was in the deed, and the receivers had no power to bind their successors by such an agreement.

Bill to reform deed and for specific performance. On general demurrer.

*Mr. J. W. Taylor*, for demurrant.

*Mr. L. Cochran*, for complainant.

The Chancellor.

This suit is brought to reform a deed of conveyance given by the complainant to the receivers, for the creditors and stockholders of the New Jersey Midland Railway Company. The receivers have been relieved from their duties, and the property of the company restored to it, and the name of the company has been changed, and the company has been consolidated with other companies into a corporation by the name of the New York,

Susquehanna and Western Railroad Company, which last-mentioned company now owns the Midland road. The bill states that in a settlement between the receivers and the complainant of a claim which the latter had in suit in this court against the Midland company, for the specific performance of an agreement made in settlement of his claim against the company, for land taken by it from him on proceedings for condemnation, it was agreed between the parties that, in consideration of the payment to him of certain moneys, and giving to him a free pass for himself over the railroad for life, and the undertaking on the part of the company to build and maintain fences on the line on each side of the land taken from him, the complainant would convey the land condemned, and an additional quantity agreed upon between them ; that the complainant, in execution of his part of the agreement, caused the deed for the land to be drawn, and with his wife executed it ; that it contained, when it was so executed, a covenant on the part of the grantees, the receivers, that they, and their successors and assigns, should build and maintain good and sufficient fencing between the lands described in the deed and conveyed thereby, and the complainant's other lands adjoining thereto ; that he delivered the deed to his attorney, in order that the latter might close up the matter for him by delivering the deed to the receivers on receipt of the money agreed to be paid, and of the free pass ; that the attorney presented the deed to the receivers, and they said that they preferred not to issue a life pass to the complainant, but that they, and their successors and assigns, would issue to him an annual pass over the railroad and would renew it at the end of each year during his life, and that if the deed was delivered to them they would, in consideration thereof, agree that such passes should be so issued to him ; that they also said they preferred that the covenant contained in the deed to build and maintain the fences should not be there, and requested that it be erased, and said that if it were erased it should be equally binding on them and their successors in all respects as if it had been permitted to remain, and that they would, in consideration of the delivery of the deed, agree that they and their successors would build and maintain the

fences. The bill further states that the complainant's attorney, confiding in the integrity and good faith of the receivers, and believing that if the parties to the deed should agree that the agreement for the pass and fences should be binding, it would, though not in the deed, be as enforceable against the receivers and their successors and assigns as if it were there, it was then agreed between him and the receivers that the deed did not show the whole of the contract, and that in consideration of the delivery of the deed the receivers and their successors would give the pass and build and maintain the fences, and he thereupon struck out the covenant, and on receiving the money agreed to be paid on the settlement delivered the deed; and the bill further states that the complainant subsequently discontinued his suit for specific performance. It also alleges that if the agreement is not now binding, that fact is due to the mutual mistake of the parties. It also states that the receivers observed the agreement while they were in office—building the fences and furnishing the pass annually—but that the defendants refuse to observe it. It prays specific performance and the rectification of the deed by the insertion of the covenant therein.

It will be seen that the mistake which the court is asked to correct occurred through the confidence of the complainant's attorney in the receivers, and the supposition on the part of both him and them that the erasing of the covenant would in no wise affect the complainant's rights. The mistake was not in omitting to insert a covenant, but in striking one out of the deed after it had been executed by the complainant. And the striking out was done not by the complainant, but by his attorney, in his absence and without his knowledge or consent. And it was done on the assurance of the grantees that the covenant would have equally binding effect if it were not contained in the deed as if it were. "If a man," says Mr. Kerr, "through misapprehension or mistake of the law, parts with or gives up a private right of property, or assumes obligations upon grounds upon which he would not have acted but for such misapprehension, a court of equity may grant relief if, under the general circumstances of the case, it is satisfied that the party benefited

by the mistake cannot in conscience retain the benefit or advantage so acquired." *Kerr on F. & M. 398.* The principle thus enunciated was recognized and applied in *Green* v. *M. & E. R. R. Co.,* 1 *Beas.* 165 (a suit very similar to this), where a grantor signed a deed for land to a railroad company for its road, without a reservation of certain rights (to a wagon-way over the railroad), on the assurance of the grantee's attorney that the right would not be affected by the instrument. The principle is applicable here, so far as the covenant (which, it is to be remarked, was only as to the fence) is concerned, but not to the agreement for a pass. That was not contained in the deed. It appears by the bill to have been a mere verbal agreement by the receivers, so far as they themselves were concerned, and a mere verbal assurance, so far as their successors were concerned, that they and their successors would issue to the complainant an annual free pass each year during his life, with which agreement and assurance the complainant's attorney was satisfied and relinquished the claim to receive then a free life pass as a part of the consideration of the deed. The receivers could not make an agreement for a free life pass which would bind subsequent owners of the railroad. As to the agreement for fencing as part of the consideration of the deed, the case is different. The demurrer is too extensive. It will therefore be overruled, with costs.